IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHRISTOPHER NETTLETON, an individual, | Case No. 6:22-cv-01290-MC |
| Plaintiff, | OPINION AND ORDER |
| vs. | |
| EXACT SCIENCES CORPORATION, a Delaware Corporation, | |
| Defendant. | |

_____

MCSHANE, J.:

Plaintiff, Christopher Nettleton, brings claims for breach of contract and fraud against Defendant, Exact Sciences Corporation. Plaintiff alleges that Defendant fraudulently induced Plaintiff to accept an employment offer under the false assurance that Plaintiff would not have to relocate for the job. Because Defendant later required relocation, Plaintiff contends that Defendant breached the terms of his employment contract. Defendant moves to dismiss for failure to state a claim. Def.'s Mot., ECF No. 3. For the following reasons, Defendant's Motion is GRANTED.

**BACKGROUND**

Prior to his employment with Defendant in September of 2021, Plaintiff worked as a sales representative at Pfizer Corporation for twenty-eight years. FAC ¶ 5. In 2018, Pfizer entered into a three-year agreement with Defendant to co-promote Cologuard, an early-screening DNA test for colorectal cancer developed by Defendant. FAC ¶ 6. In accordance with the

1 – OPINION AND ORDER

agreement, Pfizer assigned 450 sales representatives to Internal Medicine Team 1 ("IMT-1") to work primarily on the promotion of Cologuard. FAC ¶ 6. Plaintiff was a member of IMT-1 in Eugene, Oregon. FAC ¶ 8.

In August 2021, Pfizer announced its plan to layoff all 450 of the IMT-1 team, including Plaintiff. FAC ¶ 10. Plaintiff submits that this "sudden lack of access to experienced product representatives to contact the physicians and health care organizations in Pfizer's vast network," caused Defendant to believe that Defendant's 2021 fourth quarter stock would be negatively impacted. FAC ¶ 11. Based on this concern, Defendant developed a plan to hire the former Pfizer IMT-1 employees "immediately upon their layoff from Pfizer to create the appearance of a seamless transition of the Cologuard marketing to it from Pfizer." FAC ¶ 12. Plaintiff further alleges that Defendant did not plan to keep these IMT-1 employees permanently and that the only purpose of hiring them was to inflate Defendant's stock value through the fourth quarter of 2021. FAC ¶ 24.

On the same day the layoffs were announced by Pfizer, Defendant sent an email to the IMT-1 employees containing a description of an employment opportunity, as well as information on how to apply.[1] FAC ¶ 14. Plaintiff received this email on August 31, 2021, and responded to the invitation to apply for a position as a "Senior Territory Manager." FAC ¶ 16. The email stated that "the role posted here will not require candidate relocation and it is our expectation that all previous Pfizer colleagues continue to serve in their current territories." FAC ¶ 16. After applying to the position, Plaintiff received a formal job offer on September 3, 2021, in an electronic document which contained the following statement:

> This letter supersedes all prior written or oral communications, agreements or understandings regarding employment by the Company. The Company is an

---

[1] Plaintiff refers to this email as "the first part of his personalized job offer." FAC ¶ 16.

2 – OPINION AND ORDER

> employer-at-will and this offer of employment and the details contained within should not be construed as a contract of continuing employment.

FAC, Ex. B, at 12, ECF No. 1. The September offer letter did not include any statements regarding sales territory or relocation. *Id.* Plaintiff then signed a non-compete agreement and a non-solicitation agreement on September 7, 2021, and began working for Defendant as a Senior Territory Manager on September 13, 2021, in Eugene, Oregon. FAC ¶ 23.

On January 14, 2022, Defendant reassigned Plaintiff to Bend, Oregon, and informed Plaintiff that he would have to work in-territory five days a week. FAC ¶ 26. This assignment would require Plaintiff to either live in the Bend territory or commute between five and twelve hours a day. FAC ¶ 26. Plaintiff alleges that this relocation was an attempt to force him to resign. FAC ¶ 27. Plaintiff attempted to reach a compromise with Defendant regarding his new assignment but was told that he could either accept the new position or "quit and accept a severance offer of twelve weeks of salary." FAC ¶ 30. Apparently, Defendant gave Plaintiff an ultimatum on April 25, 2022, and when Plaintiff refused, Defendant terminated Plaintiff as an employee on May 23, 2022. FAC ¶ 33. Plaintiff also alleges that in an endeavor to procure the resignation of the new employees, Defendant reassigned a large portion to new territories or reassigned them to "virtual representatives." FAC ¶ 32. Plaintiff contends that by May of 2022, Defendant "eliminated" the positions of 230 of the 400 newly hired sales representatives. *Id.*

Plaintiff now brings this action alleging fraud and breach of contract, and Defendant moves to dismiss. *See* Def.'s Mot., ECF No. 3.

## STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to

infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

The court must accept the complaint's factual allegations as true and construe those facts in the light most favorable to the non-movant, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*; *Twombly*, 550 U.S. at 555. Once the complaint is stripped of conclusory statements, the judge then applies "judicial experience and common sense" and considers "obvious alternative explanations" to determine if the complaint states a plausible cause of action. *Iqbal*, 556 U.S. at 679, 682 (quoting *Twombly*, 550 U.S. at 567) (internal quotation marks omitted). If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Plaintiff argues that Defendant breached its contractual promise by relocating him to a new sales territory in Bend. FAC ¶ 45. Further, Plaintiff avers that Defendant engaged in fraud by knowingly promising not to relocate Plaintiff while having no intention of keeping that promise. FAC ¶ 35. For the following reasons, the Court dismisses both claims.

I.   **Breach of Contract Claim**

"To state a claim for breach of contract under Oregon law, a plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach, and defendant's breach resulting in damage to plaintiff." *Saxco Int'l, LLC v. Wright*, No. 3:17-CV-0849-PK, 2017 WL 6888567, at *2 (D. Or. Oct. 18, 2017) (quoting *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1029 (D. Or. 2012)). Plaintiff narrowly meets the first hurdle to establish a

breach of contract action. Attached to his Complaint, Plaintiff presents two documents that "allegedly comprise the contract in question:" the August 21, 2021, email and the September 3, 2021, offer letter. Def.'s Mot. 8; FAC, Ex. B. The alleged breach is sourced entirely from a statement from the August 31, 2021, email: "The role posted here will not require candidate relocation and it is our *expectation* that all previous Pfizer colleagues continue to serve in their current territories." FAC, Ex. B, at 1 (emphasis added). Plaintiff argues that this statement constitutes a contractual promise to refrain from relocating him at any point during his employment with Exact Sciences, Corp. *See* Pl.'s Resp. 5, ECF No. 7. But Plaintiff has not shown how the August 31, 2021, email is a "personalized offer" or a binding contract of any sort. The August email was merely a targeted advertisement to all former Pfizer employees that provided information about the position and how potential applicants should apply. FAC Ex. B at 1–2. The email instructs candidates to submit an application and then "[o]nce your application is received and reviewed, *offers will be extended* on September 7th, 2021[.]" *Id.* at 1 (emphasis added).

Nevertheless, Plaintiff also argues that the September 3, 2021, offer letter – which the Court will construe as a contractual document– is not a completely integrated document and therefore the Court may consider the terms in the previous August 31, 2021, email to determine the material terms in Plaintiff's September offer letter. Pl.'s Resp., at 2. "A [contractual] writing is fully integrated if a reasonable person under the circumstances would have understood the writing to be a complete and exclusive expression of all the terms of their agreement." *Sterling Sav. Bank v. JHM Prop., LLC*, 717 F. Supp. 2d 1142, 1148 (D. Or. 2010) (*adopting Magistrate Judge Acosta's Findings and Recommendation*). When a contract is fully integrated, "parties may not offer extrinsic evidence of the existence of additional terms not contained in the

5 – OPINION AND ORDER

writing."[2] *Id.* Furthermore, a writing that is complete on its face "creates the presumption that it was intended to be a complete integration," and this presumption may only be defeated by "substantial evidence that the parties did not intend that the writing embody their entire agreement." *Id.* (citing *Hatley v. Stafford*, 588 P.2d 603, 609 (Or. 1978)).

Alternatively, "if the parties did not intend the writing to represent their entire agreement, the agreement is only partially integrated, and prior consistent additional terms not evidenced by the writing may still form part of the entire agreement." *State ex rel. Cipriano v. Triad Mech., Inc.*, 925 P.2d 918, 922 (Or. Ct. App. 1996). If the writing is found to be partially integrated, prior terms are allowed if they do not contradict the writing. *McDonald v. Sun Oil Co.*, 548 F.3d 774, 785 (9th Cir. 2008) (*abrogated on other grounds*). The question of whether the parties intended for the writing to be completely or partially integrated is a question of fact. *Id.* "The court may consider all the circumstances, including parol evidence, to determine whether the parties intended the writing to be a complete or partial integration." *Id.* at 785–86.

Here, the terms of Plaintiff's employment with Exact Sciences Corp., were reduced to writing in the September 3, 2021, offer letter. FAC, Ex. B. Plaintiff argues that because the offer letter did not contain a specific integration clause[3] stating that "the letter contains the entire understanding and agreement between the parties," Defendant did not *intend* for it to constitute the full agreement between the parties. Pl.'s Resp., at 3. The Court disagrees. The absence of an

---

[2] *See also* Or. Rev. Stat. § 41.740: "[w]hen the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be ... no evidence of the terms of the agreement, other than the contents of the writing[.]"

[3] "An integration clause refers to language in a writing or writings adopted by the parties contracting, whereby the parties state that the writing is the final and complete expression of the parties' agreement." *Siegner v. Interstate Prod. Credit Ass'n of Spokane*, 109 Or. App. 417, 429 (1991) (quoting trial court jury instructions).

integration clause "is not a dispositive indicator of the parties' intent, and, thus, the mere absence of an integration clause is insufficient to rebut the presumption of complete integration." *Cipriano*, 925 P.2d at 924. Moreover, the inclusion of a supersession clause in the offer letter effectuates the same function as an integration cluse. The document states that "this letter supersedes all prior written or oral communications, agreements or understandings regarding employment by the Company." FAC Ex. B at 12. The language is neither ambiguous nor complex and the clause clearly shows an intention that the terms of the September 3, 2021, letter, and only that letter, constitute the full agreement between the parties. Therefore, the September offer letter is a fully integrated document, and the parties are bound by the terms in that document alone. No extrinsic evidence is admissible to define or contradict the terms of the agreement. *Sterling Sav. Bank,* 717 F. Supp. 2d at 1148. Since the September 3, 2021, offer letter contains no "promises" or terms regarding relocation or geographic territories, Plaintiff's argument that Defendant breached its promise to not relocate Plaintiff is futile.

## II.     Fraud Claim

In addition to the general pleading requirements, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened standard requires a party to allege "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The party must identify "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics c4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993,

7 – OPINION AND ORDER

998 (9th Cir.2010)) (internal quotation marks and citations omitted). The purpose of Rule 9(b) is three-fold:

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs;
>
> (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and
>
> (3) to prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotations omitted). In addition to Rule 9(b)'s pleading requirement, this Court must consult the relevant state law elements for a fraud claim. *Kearns*, at 1125. In Oregon, a party alleging a fraud claim must show the existence of nine elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Bank of N.Y. Mellon v. Stabenow*, No. 3:16-cv-01590-MO, 2017 WL 1538156, at *8 (D. Or. Apr. 25, 2017) (internal citations omitted). Plaintiff's allegation of fraud fails to establish with sufficient particularity the following elements: the falsity of the representation, Defendant's knowledge of its falsity, an intent to defraud Plaintiff, and Plaintiff's right to rely on the representation.

According to Plaintiff, Defendant represented to future employees that it would not require relocation when Defendant "knew or should have known that this representation was false." Pl.'s Resp., at 5. Plaintiff relies on the August 31, 2021, email's statement that "the role posted here will not require candidate relocation and it is our expectation that all previous Pfizer colleagues continue to serve in their current territories." FAC, Ex. B at 1. Plaintiff construes this

statement as an absolute promise. But a representation that a person – or entity – will do something in the future cannot sustain a fraud claim, unless *at the time the promise was made*, the person had no intention of performing that promise. *Conzelmann v. Nw. Poultry & Dairy Products Co.*, 190 Or. 332, 351 (1950) (emphasis added). "[S]uch an intent formed later and carried into effect is insufficient." *Id.* Thus, "[a] plaintiff must set forth what is false about a statement, and why it was false when it was made." *Webster v. Brookdale Senior Living Cmtys.*, *Inc.*, 3:16-cv-01060-AA, 2018 WL 1508871, at *3 (D. Or. March 27, 2018). Plaintiff fails to provide any evidence that Defendant knowingly made a false statement with an intent to defraud him. Plaintiff merely offers a sweeping legal conclusion that Defendant "made a promise to Plaintiff that he would not have to relocate" and made that promise "in an effort to induce him . . . to accept the position[.]" FAC ¶ 35. The only evidence Plaintiff provides is circular; Defendant later relocated him to Bend, therefore, Defendant clearly never intended to make good on its "promise" not to relocate Plaintiff. *Id.* This is insufficient to sustain a fraud claim. *See Conzelmann*, 190 Or. at 352 ("A fraudulent intent not to perform a promise may not be inferred as existing at the time the promise is made from the mere fact of non performance.").[4]

Moreover, it was not reasonable for Plaintiff to rely on any statements from the August 31, 2021, email. *Stabenow*, 2017 WL 1538156 at *8. The right to rely "requires proof of the reasonableness of the reliance" and is measured by the "totality of the parties' circumstances and conduct." *Or. Pub. Emp.s' Ret. Bd. ex rel. Or. Pub. Emp.s' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 428 (2004). Plaintiff alleges that Defendant made him a personal

---

[4] Plaintiff further alleges that Defendant never had any intention of keeping the majority of the new Pfizer employees past the fourth quarter of 2021. FAC ¶ 15. Again, Plaintiff draws a circular conclusion unsupported by any independent facts, namely, that 230 Pfizer employees resigned or were terminated sometime after the fourth quarter of 2021, therefore, Defendant must have hired those employees with the intent to terminate their positions later. FAC ¶ 32.

9 – OPINION AND ORDER

guarantee that Plaintiff would not have to relocate, but the only evidence he provides is the August email. The email merely states a general "expectation" that Pfizer colleagues will not have to relocate. FAC, Ex. B at 1. But an expectation is not a guarantee, and it was unreasonable to interpret this statement as a "promise" to never relocate Plaintiff at any time during his employment. Even if it was reasonable to rely on this statement, by accepting the terms of the September 3, 2021, letter, Plaintiff acquiesced to the supersession clause contained within: "This letter supersedes all prior written or oral communications, agreements or understandings regarding employment by the Company." FAC, Ex. B, at 12. The supersession clause is clear and unambiguous, thus Plaintiff's reliance on any previous information contained in the August 31, 2021, email was unreasonable. In sum, Plaintiff has failed to show the existence of a binding contractual statement that he could *reasonably* rely upon, or any additional evidence indicating that Defendant personally assured Plaintiff that he would not have to relocate from Eugene, Oregon.

Finally, Defendant argues that Plaintiff did not meet Rule 9(b)'s heightened pleading requirement because Plaintiff failed to allege a particular theory of fraud. Def.'s Mot. 11–12. Oregon law recognizes four theories of fraud: (1) affirmative misrepresentation; (2) omission of material fact when there is an independent duty to disclose; (3) omission of a material fact needed to make a "half-truth" not misleading; and (4) actual or active concealment. *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1142 (D. Or. 2020) (citing *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 160 F. Supp. 3d 1214, 1223-24 (D. Or. 2016)). Defendant relies on Judge Simon's holding in *Martell*, to conclude that Plaintiff must explicitly plead a theory of fraud to meet Rule 9(b)'s pleading requirements. *See Id.* at 1144 ("If Plaintiff wants to proceed with a theory of fraud by active concealment . . . Plaintiff must do so explicitly."). While Defendant's

10 – OPINION AND ORDER

argument is persuasive, the Court is not bound to follow the additional requirements set forth in *Martell*. In any event, Plaintiff's fraud claim fails on other grounds. The Court gives Plaintiff leave to amend his Complaint and recommends that Plaintiff clearly state his purported theory of fraud in addition to the other elements discussed above.

## CONCLUSION

Defendant's Motion to Dismiss (ECF No. 3) is GRANTED. Plaintiff's breach of contract claim is dismissed with prejudice. Plaintiff's fraud claim is dismissed without prejudice, with leave to amend.

IT IS SO ORDERED.

Dated this 13th day of December, 2022.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge

11 – OPINION AND ORDER