IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER NETTLETON, *an individual*,

        Plaintiff,

    vs.

EXACT SCIENCES CORPORATION, *a Delaware Corporation*,

        Defendant.

Case No. 6:22-cv-01290-MC

OPINION AND ORDER

_____

MCSHANE, J.:

    Plaintiff, Christopher Nettleton, brings this action against Defendant, Exact Sciences Corporation, alleging that Defendant fraudulently induced Plaintiff to accept an employment offer under the false promise that Plaintiff would not have to relocate for the job. On December 12, 2022, this Court dismissed Plaintiff's previous fraud claim for failure to state a claim,[1] ruling

_____

[1] The Court also dismissed Plaintiff's breach of contract claim with prejudice. *Opinion and Order* 7, ECF No. 10.

1 – ORDER AND OPINION

that Plaintiff failed to plausibly allege facts to support the elements of fraud under Oregon law[2] and Fed. R. Civ. P. 9(b)'s heightened pleading standard.[3] *See Opinion and Order* 11, ECF No. 10. The Court gave Plaintiff leave to amend and Plaintiff reasserted his fraud claim on January 20, 2023. Pl.'s Second Amend. Compl. ¶¶ 43–54, ("SAC"). Defendant now moves to dismiss (ECF No. 14), arguing that Plaintiff has simply reasserted the same factual allegations[4] while failing to cure the deficiencies identified in his First Amended Complaint. Def.'s Mot. 2, ECF No. 14. The Court agrees.

## DISCUSSION

Plaintiff contends that Defendant fraudulently induced him to accept employment with Exact Sciences by misrepresenting that he would absolutely and unconditionally remain in his current sales territory. SAC ¶ 47. To support this claim, Plaintiff again relies on a single statement made by Defendant in an August 31, 2021 email. The email, which advertised the

---

[2] A party alleging a fraud claim in Oregon must show the existence of nine elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Bank of N.Y. Mellon v. Stabenow*, No. 3:16-cv-01590-MO, 2017 WL 1538156, at *8 (D. Or. Apr. 25, 2017) (internal citations omitted).

[3] Fed. R. Civ. P. 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." This includes "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The party must identify "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics c4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011) (internal quotation marks and citations omitted).

[4] As the parties are familiar with the facts of this case, the Court will not discuss them in detail here. *See Opinion and Order* (ECF No. 10), for a detailed background.

2 – ORDER AND OPINION

position of "Sr. Territory Manager" and invited candidates to apply, stated, "[t]he role posted

here will not require candidate relocation and it is our *expectation* that all previous Pfizer

colleagues continue to serve in their current territories." SAC, Ex. A at 1 (emphasis added).

However, three days later Plaintiff received a binding "Acceptance Letter" that detailed the exact

conditions of his employment and, critically, made no assurances that he would remain in a

particular sales territory. SAC, Ex. B, at 3, ECF No.11. The letter also contained the following

supersession clause:

> This letter supersedes all prior written or oral *communications, agreements or*
> *understandings regarding employment* by the Company. The Company is an
> employer-at-will and this offer of employment and the details contained within
> should not be construed as a contract of continuing employment.

*Id*. (emphasis added). Plaintiff signed the Acceptance Letter on September 7, 2021 and

acknowledged that he read the letter in full and accepted all employment terms. *Id.*

## I.    Intent to Defraud

This Court previously ruled that that it was unreasonable for Plaintiff to construe

Defendants "expectation" in the August 31, 2021 email as a promise, and that even if the

statement was a promise, Plaintiff failed to show that that Defendant made that promise with an

intent to defraud Plaintiff. *Opinion and Order* 9*; see Conzelmann v. Nw. Poultry & Dairy*

*Products Co.*, 190 Or. 332, 351 (1950) ("It is well established that fraud cannot be predicated

upon a promise to do something in the future, unless the person making the promise, at the time

he made it, had no intention of performing."); *Webb v. Clark*, 274 Or. 387, 392 (1976) ("It is, of

course, elementary that the mere nonperformance of a promise made, or the failure to carry out

an intention expressed, in the course of negotiations, is neither fraud nor evidence of fraud.").

Plaintiff contends that the supplemental facts alleged in his SAC now show that

Defendant made a promise with either no intent to perform or with a "reckless disregard as to

[it's] ability to perform,"[5] Pl.'s Resp. 5. First, Plaintiff alleges that Defendant knew that "it had or was going to hire" a consultant to "conduct a comprehensive reorganization of the nationwide sales force." Pl.'s Resp. 5–6; SAC ¶ 45. He further avers that Defendant "knew or should have known that its anticipated reorganization of its sales force *could* result in changed territories[.]" *Id.* (emphasis added). But Plaintiff's averments that Defendant *knew* on August 31, 2021 that it would or might hire a consultant at a future date, and that it would likely follow the consultant's advice, which *might* result in a change in sales territories, is pure conjecture. Defendant first notified its employees on December 3, 2021, that it had hired the consultant and had plans to restructure the sales team, stating, "this week we took our first steps with project voyager." SAC Ex. D at 1. There is nothing here to suggest that on August 31, 2021, Defendant had already hired the consultant and knew for a fact, or was even reasonably certain, that it would relocate Plaintiff after hiring him.

Plaintiff further contends that Defendant must have intended to relocate Plaintiff because it failed to seek resumes, performance reviews, or general qualifications from candidates, and failed to "ask applicants to identify their current territories" before hiring them. Pl.'s Resp. 6; SAC ¶ 46. Again, this does not suggest a fraudulent intent. The new hires were all former Pfizer IMT-1 employees who had been promoting Defendant's product for the past three years. SAC Ex. C, at 2. They were already trained and well versed with Cologuard; the transition from Pfizer to Exact Sciences did not change their job function, only their employer. *Id.* It was perfectly reasonable for Defendant to hire the Cologuard sales team without reviewing their resumes or

---

[5] "One species of a misimpression that will give rise to an actionable claim in fraud is a promise made with the knowledge that it will not be performed or with reckless disregard about whether it will be performed." *Barinaga v. JP Morgan Chase & Co.,* 749 F. Supp. 2d 1164, 1182 (D. Or. 2010) (quoting *Estate of Schwarz v. Philip Morris Inc.,* 135 P.3d 409 (Or. App. 2006)).

qualifications. None of these allegations – either alone or in the aggregate – support a reasonable inference that Defendant intended to fraudulently induce Plaintiff on August 31, 2021.

## II.    Right to Rely

This Court also ruled that Plaintiff's fraud claim lacked another essential element; his right to rely on Defendant's allegedly false misrepresentation. *Stabenow*, 2017 WL 1538156, at *8; *Opinion and Order* 9. The right to rely "requires proof of the reasonableness of the reliance" and is measured by the "totality of the parties' circumstances and conduct." *Or. Pub. Emp.s' Ret. Bd. ex rel. Or. Pub. Emp.s' Ret. Fund v. Simat, Helliesen & Eichner*, 83 P.3d 350, 362 (Or. App. 2004). This Court ruled that Plaintiff could not reasonably rely on any communications in the August 31, 2021, email because the express provisions in the September 3, 2021, Acceptance Letter clearly and unambiguously "supersede[d] all prior written or oral communications, agreements or understandings regarding employment by the Company." SAC, Ex. B, at 3; *see Opinion and Order* 10. Because the only prior communication Plaintiff had from Defendant was the August 31, 2023 email, any statements about the job in the August email that were *not* reflected in the Acceptance Letter were superseded.

Plaintiff relies on *Knepper v. Brown,* 50 P.3d 1209 (Or. App. 2002) to support the proposition that one can reasonably rely on a misrepresentation even when there is a legal "disclaimer" – like the supersession clause here – and that such reasonableness is a question of fact for the jury.[6] Pl.'s Resp. 8–9. In *Knepper*, the plaintiff brought a fraud claim against the

---

[6] Plaintiff conversely argues that "[t]he right to rely is a conclusion of law, [and] therefore, it need not be pleaded as ultimate fact." Pl.'s Resp. 3 (quoting *U.S. Nat. Bank of Or. v. Fought*, 291 Or. 201, 222 (1981)). Although Plaintiff does not need to explicitly state that he had a "right to rely" in his Complaint, he must still allege sufficient facts to support an inference of reasonable reliance. *Knepper*, 50 P.3d at 1215, n.10. From those facts, the Court may conclude, as a matter of law, that he had no right to rely on Defendant's misrepresentation.

publisher of Yellow Pages, alleging that it misrepresented a listed physician as "Board Certified" to perform liposuction. 50 P.3d at 1211. The publisher argued that the plaintiff had no right to rely on the representation because the Yellow Pages included a disclaimer that directed the reader to seek more information about the physician's qualifications. *Id.* at 1212, 1214. The Oregon Court of Appeals reversed the lower court's dismissal at summary judgment, stating that "the mere existence of the disclaimer does not, as a matter of law, compel a conclusion that a person may not reasonably rely on a representation in a Yellow Pages advertisement." *Id*. at 1215. However, the "disclaimer" at issue in *Knepper* was described as "so carefully hedged, so artfully crafted . . . that it disclaims nothing . . . [I]t mumbles its message in a whisper, hoping that no one will hear." *Id*. The court clarified that the existence of a disclaimer does not automatically negate a plaintiff's right to rely "[w]hen [the] allegedly "disclaiming" language is as indefinite as that at issue here[.]" *Id*. It went on to suggest that if "the disclaimer at issue was *unambiguous*" then dismissal of the claim would be appropriate. *Id*. (emphasis added) (explanatory parenthetical).

In contrast to *Knepper*, the supersession clause here is unambiguous. As opposed to being buried in an extensive legal document, the clause is in plain view to the reader, located just a few lines up from the closing signature and in the same font size as the rest of the relatively short document. The clause clearly states that the explicit employment terms contained in the letter supersedes all prior communications or understandings that Plaintiff had about his employment. This is neither elusive nor "artfully crafted" to confuse the reader. *Knepper*, 50 P.3d at 1215. Plaintiff's reliance on terms outside the acceptance letter was unreasonable.

**CONCLUSION**

Defendant's Motion to Dismiss (ECF No. 14) is GRANTED. Plaintiff's fraud claim is dismissed with prejudice.

IT IS SO ORDERED.

Dated this 11th day of May, 2023.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge