IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHRISTOPHER NETTLETON,
*an individual*,

            Plaintiff,

    v.

EXACT SCIENCES CORPORATION,
*a Delaware Corporation*,

            Defendant.

Case No. 6:22-cv-01290-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Christopher Nettleton brings this action against Defendant Exact Sciences Corporation ("Exact") for fraud under Oregon law based on an affirmative misrepresentation. 3d Am. Compl. ¶¶ 43–51 ("TAC"), ECF No. 58. Before the Court is Defendant's Motion for Summary Judgment on Plaintiff's fraud claim. Def.'s Mot., ECF No. 65. Because Plaintiff has not established the falsity of the representation made by Defendant or Plaintiff's detrimental reliance on the representation, Defendant's Motion for Summary Judgment is GRANTED.

## **PROCEDURAL BACKGROUND**

This case was removed from Lane County Circuit Court on August 29, 2022. ECF No. 1. The Court subsequently granted Defendant's motion to dismiss a breach of contract claim in Plaintiff's First Amended Complaint. ECF No. 10. Following a Second Amended Complaint (ECF No. 11), the Court granted Defendant's motion to dismiss a fraud claim. ECF No. 20.

Plaintiff appealed. ECF No. 23. On appeal, the U.S. Court of Appeals for the Ninth Circuit

1 – OPINION AND ORDER

affirmed in part and reversed in part. Mem. Op., ECF No. 25. The Ninth Circuit affirmed dismissal of Plaintiff's breach of contract claim, but reversed dismissal of Plaintiff's fraud claim and remanded for further proceedings. *Id.*; Mandate, ECF No. 26. With leave of the Court, Defendant then moved to dismiss Plaintiff's claim for emotional distress damages (ECF No. 36), which the Court granted (ECF No. 46). Thereafter, Plaintiff filed a Third Amended Complaint. ECF No. 58.

Defendant now moves for summary judgment on Plaintiff's remaining claim for fraud in the operative complaint.

## LEGAL STANDARD

Upon a motion for summary judgment, the moving party bears an initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine" dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute is considered "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* To defeat summary judgment, a nonmoving party must do more "than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).

## SUMMARY OF MATERIAL UNDISPUTED FACTS

For approximately 28 years, until September 2021, Plaintiff Christopher Nettleson worked as a sales representative for Pfizer. Berg Decl. Ex. A ("Pl. Dep.") 47:2–8, ECF No. 66-1. On or

about August 25, 2021, Plaintiff received notice that he, along with his entire sales team would be involuntarily terminated by Pfizer as of November 8, 2021. Pl. Dep. 68:1–25, 66:10–12. At the time, Plaintiff worked for Pfizer selling a product produced by Exact known as "Cologuard." His sales territory covered a large portion of Oregon and included within its border Eugene, Medford, and Bend. *Id.* at 55:8–63:5 (explaining his territory, at times, included the "whole state of Oregon" plus Vancouver and Longview, Washington); Chaquette Decl. Ex. B, ECF No. 68-2.

The following day, Plaintiff responded to a survey from Exact, expressing his interest in receiving information about a potential employment opportunity to continue to sell Cologuard. Preimesberger Decl. ¶ 2, ECF No. 67.

On August 31, 2021, Exact included Plaintiff in a mass email soliciting applications from all soon-to-be-terminated Pfizer sales representatives selling Cologuard. The subject line of the email read, "Join Exact Sciences – Application and Benefit Information Provided Here." Berg Decl. Ex. B, ECF No. 66-2. The August 31 email "ask[ed the candidates to] complete [a] brief application [linked within the email] prior to the close of business on September 3, 2021," and contained the following statement, upon which Plaintiff rests his fraud claim: "The role [of Sr. Territory Manager] posted here will not require candidate relocation and it is our expectation that all previous Pfizer colleagues continue to serve in their current territories." *Id.* at 1; *see also* Berg Decl. Ex. C ("Premeisberger Dep.") 50:1-6 ("[A] very common question is, Will I have to move for the job? So we were trying to proactively suggest that, no, the jobs that we are hiring you into for Q4 would not require candidate relocation."), ECF No. 66-3.

It was important to Exact to promptly hire as many Pfizer sales representatives selling Cologuard as possible for continuity in reaching doctor clients. This continuity would ensure a successful fourth quarter, "Q4," of 2021—the time of year during which Exact typically made

3 – OPINION AND ORDER

"a significantly larger portion of [its] sales." Premeisberger Dep. 49:13–23 ("The way our business operates, Q4 at that time meant everything to us."); Coit Decl. Ex. 3, 5, ECF No. 74. To facilitate the hiring of Pfizer sales representatives, Exact's August 31 email offered "[t]o help provide as many answers as possible, [by] hosting Q&A sessions," to which "[a]ll candidates w[ould] be invited to attend[.]" Berg Decl. Ex. B at 1.

Plaintiff attended the webinar and Q&A session on September 1, 2021. Pl. Dep. 145:10–21. The August 31 Email also instructed potential applicants that they could get any "immediate questions, . . . [answered by] utiliz[ing] the email address [] AskExact@exactsciences.com," assuring that "[w]ithin 24 hours, a member of [Exact's] HR team will reach out . . . with additional information." Berg Decl. Ex. B; Pl. Dep. 131:16–18. Other Pfizer candidates submitted questions regarding anticipated sales assignments in 2022, potential changes to their current territory, and extensions of their Exact start date to permit the maximization of retirement benefits with Pfizer. *E.g.*, Preimesberger Decl. Ex. B–F, ECF No. 67-2, 67-3, 67-4, 67-5, 67-6; Coit Decl. Ex. 11–12, ECF No. 74. Plaintiff submitted one question regarding the receipt of his application and access to the September 1 webinar. Preimesberger Decl. Ex. G, ECF No. 67-7; Pl. Dep. 166:12–18.

On September 3, 2021, Plaintiff received a job offer from Exact. Pl. Dep. 147:19–21. The offer set out that "all prior written or oral communications" would be "supersede[d]" by the offer letter and that employment with Exact would be at-will. Berg Decl. Ex. E, ECF No. 66-5. On September 7, 2021, without making any further inquiries, Plaintiff accepted Exact's job offer. Pl. Dep. 153:22–25, 159:2–17.

On September 13, 2021, Plaintiff terminated his employment with Pfizer by voluntarily signing a severance and release agreement prior to his scheduled November 8, 2021 separation. Pl. Dep. 153:1–16; McEntee Decl. Ex. A ("Severance Agreement"), ECF No. 69-1. Before

4 – OPINION AND ORDER

departing Pfizer, Plaintiff did not apply for a different role at Pfizer.[1] Pl. Dep. 92:8–16; *see also id.* at 71:13–19 ("Q. . . . Is it accurate, though, you did not receive an offer from Pfizer to remain employed? A. [It's] also accurate that I didn't apply for one. Yes . . . that is accurate."). Pfizer generally "encouraged" every Pfizer sales representative affected by the to apply for other posted positions. Pl. Dep. 72:20–74:12. Plaintiff was never individually encouraged to apply. *See id.* Pfizer required all applicants, internal or external, to "post and compete" for a position in a competitive, standardized process. Pl. Dep. 83:24–84:14. Pfizer did not have any available positions that would have allowed Plaintiff to remain in Eugene, which was Plaintiff's top priority. Pl. Decl. ¶¶ 3, 15, ECF No. 75.

On September 13, 2021, Plaintiff began his at-will employment for Exact servicing his former Pfizer territory. Pl. Dep. 169:24–170:11; Chaquette Decl. Ex. B, ECF No. 68-2. 169:24–170:11. On January 14, 2022, Plaintiff was assigned to a new territory referred to as the "Bend Oregon" territory. Pl. Dep. 169:24–170:11; Pl. Decl. Ex. 4. This territory began in Bend (129 miles from Eugene) and ran through Pendleton, Oregon (318 miles from Eugene), John Day, Oregon (258 miles from Eugene) and Ontario, Oregon (387 miles from Eugene). Pl. Decl. ¶ 21. Plaintiff declined to work his new sales territory, either by commuting or relocating from Eugene. This eventually resulted in Exact terminating Plaintiff on May 23, 2022. Pl. Decl. ¶ 6; Berg Decl. Ex. F, ECF No. 66-6; Pl. Dep. 220:15–223:12.

## DISCUSSION

The essential elements of a common-law claim for fraud are the following: "the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the

---

[1] Plaintiff later applied to two positions with Pfizer in December 2023 and January 2025, and Pfizer rejected both applications. McEntee Decl. ¶¶ 4, 6, ECF No. 69; Pl. Dep. 114:12–117:2, 121:5–12.

plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co. of Or.*, 350 Or. 336, 351–52, *adhered to on reconsideration*, 350 Or. 521 (2011). If any element is "not established by clear and convincing evidence," the fraud claim "must fail." *Webb v. Clark*, 274 Or. 387, 391 (1976). "Clear and convincing evidence means that the truth of the facts asserted is highly probable." *Coy v. Starling*, 53 Or. App. 76, 80 (1981).

## I.    Falsity and Material Misrepresentation

Plaintiff fails to establish that Exact falsely misled him. Plaintiff's fraud claim is based on Exact's August 31 email, which Plaintiff argues represents an affirmative misrepresentation.[2] Defendant emphasizes that the statement Plaintiff casts as promising that he would not have to relocate to perform the offered position of Senior Territory Manager conspicuously includes the term "candidate." Def.'s Mot. 15–16, 25–27. The terms of the statement therefore meant its promise regarding relocation was limited to the time of hiring—that is, the candidate would not have to relocate *as a candidate* in order to accept the offered position. Plaintiff's interpretation is instead that he "would not be required to relocate if [he] accepted the position" of Senior Territory Manager with Exact. Pl. Decl. ¶ 17; *see* Pl. Dep. 132:17–24, 138:10–15.

But Plaintiff's interpretation is not what Exact relayed. From the terms of the statement, Exact communicated to Plaintiff, along with other Pfizer employees, that he would not have to relocate *to* accept the position. There is no clear and convincing actionable evidence this was a false, misleading statement.[3] *See Wieber v. FedEx Ground Package Sys., Inc.*, 231 Or. App. 469,

---

[2] Plaintiff does not appear to base his claim on any representation related to Exact's statement regarding "then-current territories." *See generally* Pl.'s Resp. 17–27.

[3] The Ninth Circuit did not reverse this Court's dismissal of Plaintiff's claim on this basis. Instead, the appellate court rejected the Court's holdings that Plaintiff had not adequately pleaded intent to defraud and the effect of the supersession clause in Plaintiff's employment contract, apparently assuming in its disposition that the August 31 email represented an open ended "promis[e] that he would not have to relocate." Mem. Op. 3. This Court need not make the same assumption now as Plaintiff has not produced evidence that creates a genuine dispute of fact as to the

6 – OPINION AND ORDER

481 (2009). First, despite Plaintiff's careful phrasing in briefing (*e.g.*, Pl.'s Resp. 25 (characterizing Exact's statement as "the role posted here will not require relocation"), ECF No. 73), there is no evidence of any particularized assurance to Plaintiff regarding his relocation, nor evidence Plaintiff solicited one himself. *See Claus v. Columbia St. Bank*, 2019 WL 5624754, at *6 (D. Or. Oct. 30, 2019) (dismissing fraud claim where the defendant "refused to disclose documentation related [to] its evaluation of [the contractor]," but plaintiffs did not allege "that they tried to obtain such information at all" and the defendant's "promise to provide financial oversight of the project did not alter the [plaintiffs'] duty to investigate"). In addition, Plaintiff's subjective impression of what Exact promised to the Pfizer employees it was recruiting does not create an issue of material fact as to the falsity of Exact's representation here. *See Miller v. Olsen*, 2016 WL 4154936, at *6 (D. Or. Aug. 4, 2016), *aff'd*, 724 F. App'x 625 (9th Cir. 2018); *see also Or. Pub. Emps.' Ret. Bd. ex rel. Or. Pub. Emps.' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 428 (2004).

Remaining evidence Plaintiff highlights also fails to create a genuine dispute of material fact as to the falsity of Exact's statement or the reasonableness of his reliance on his interpretation of the statement. Plaintiff argues, "[n]othing in the representation mentions, 'the quarter we have in front of us,'" invoking Mr. Preimesberger's testimony that the statement "was meant to say the job we're asking you to join for the quarter we have in front of us we will not ask you to relocate." Pl.'s Resp. 19–20 (quoting Preimesberger Dep. 51:18–52:16). But nothing in the representation suggests it communicates a promise that a candidate, once hired, would never be asked to relocate

---

reasonableness of his interpretation of the August 31 email as a "promise" to never relocate Plaintiff at any time during his employment. *See Peralta v. Dillard*, 744 F.3d 1076, 1088–89 (9th Cir. 2014); *see also Timberline Hills Invs., LLC v. Hoviss Dev. Grp., LLC*, 2016 WL 3647975, at *3 (D. Or. July 7, 2016). In fact, separately, the Ninth Circuit acknowledged, "representations regarding relocation and [Plaintiff's] sales territory were not defined by any temporal duration." Mem. Op. 2.

as an Exact employee. In fact, Exact did not require Plaintiff to relocate to accept the position. *Cf. Donald H. Hartvig, Inc. v. Clackamas Town Ctr. Assocs.*, 101 Or. App. 79, 84 (1990) (holding representation to perform an act in the future is actionable upon a showing "either that defendant had no present intent to perform when it made the promise or, alternatively, that defendant made the promise with reckless disregard as to its ability to perform"). Plaintiff casts this interpretation as facially "nonsensical" (Pl.'s Resp. 21), but it reflected Exact's immediate staffing needs in advance of Q4 2021 and an understandable "selling point" to candidates for its position. *See* Coit Decl. Ex. 8; Preimeisberger Dep. 42:14-18.

Even if, as Plaintiff puts it, Mr. Preimesberger "admitted without hesitation that he intended the promise against relocation to be enforceable for the first three months of employment," and thus "well beyond the transition from 'candidate' to 'employee,'" this would by no means imply Exact's representation must be treated as an open-ended promise *beyond* those three months if indeed it extended past Plaintiff being a "candidate" at all. In fact, the undisputed facts show such a potential promise was honored during those three months. *Hartvig*, 101 Or. App. at 84. Plaintiff also points to emails in which other candidates asked about their desire to be relocated, and responses from Exact regarding when relocation could be possible. But, as discussed, subjective impressions of Exact's representation regarding relocation do not alter the objective meaning of the statement. *See Miller*, 2016 WL 4154936, at \*6. And that Exact did not commit to providing prompt relocation to those who wanted it in other similar communications (Coit Decl. Ex. 11–12), does not mean Exact must have promised permanent location assignments.

The undisputed facts do not provide clear and convincing evidence that Exact made a false, material misrepresentation to Plaintiff. Accordingly, Defendant Exact is entitled to judgment as a matter of law on Plaintiff's fraud claim.

## II.    **Detrimental Reliance**

Even if Plaintiff could reasonably have relied on his interpretation of Exact's statement as indefinitely guaranteeing he would not need to relocate, Plaintiff has not shown detrimental reliance on his understanding of the statement.[4] Plaintiff's theory of detrimental reliance is based on giving up his "ability to transfer to a different role within Pfizer," "40% of his pension by ending his employment before full maturity," "sign[ing] a non-compete agreement with Pfizer that kept him out of the relevant job market for 12 months post-termination," and "end[ing] up with a termination on his employment record." Pl.'s Resp. 27.

Plaintiff argues he "had no reason to submit applications for positions within Pfizer once Exact Sciences promised him that he could continue doing his same job, just for a different employer." Pl.'s Resp. 28. To be sure, Plaintiff's argument is a rationalization for his decision and is consistent with his *reliance* on Exact's statement, but it does not show *detrimental* reliance. *See Kim v. Prudential Fin., Inc.*, 2017 WL 1902163, at *4–6 (D. Or. May 8, 2017) ("general forbearance from seeking job opportunities is not sufficient to establish detrimental reliance"). Plaintiff points to no evidence of actionable "losses incident" to Exact's job offer that are distinct from the "detriment incurred from leaving one job for another." *Id.*

Further, detrimental reliance cannot rest on speculative losses. *See Vukanovich v. Kine*, 268 Or. App. 623, 636–37, *opinion adhered to as modified on reconsideration*, 271 Or. App. 133 (2015). Plaintiff's continued employment with Pfizer depended on his application for and an offer of a new job at Pfizer. This entailed a competitive process and what Plaintiff gave up when he

---

[4] Defendant takes issue with Plaintiff apparently advancing a new and distinct theory of fraud not expressly raised in the TAC based on a "half-truth." Def.'s Reply 8–9, ECF No. 80; *see Martell v. GM LLC*, 492 F. Supp. 3d 1131, 1142 (D. Or. 2020) (explaining Oregon law separates affirmative misrepresentation from "omission of a material fact needed to make a 'half-truth' not misleading" as two bases of fraud). But as discussed here, whether or not Plaintiff properly raised this theory, lack of detrimental reliance is fatal to his claim in any case.

accepted Exact's offer was only the opportunity to participate in this process as an internal applicant. *See* Pl. Dep. 82:11–84:14. Despite multiple conclusory assertions (Pl.'s Resp. 11–12), Plaintiff has not provided any evidence that he would have received a job at the end of his participation in a competitive process. *See* Pl. Dep. 98:17–22 ("Q. [B]ut was there some chance you would have not found a job at Pfizer? A. Well, of course, there's always a chance."). Instead, to the extent Plaintiff was guaranteed continued employment at Pfizer, the maximum additional guaranteed time was until November 8, 2021. *See* Pl. Dep. 68:14–17. And as to this period, Plaintiff had no damages, as he received a salary from Exact, plus severance from Pfizer. McEntee Decl. Ex. A. In addition, this period would not have affected his eligibility for a "full" pension from Pfizer, rendering this additional claimed detriment entirely dependent on him receiving a new offer from Pfizer and therefore speculative as well. Pl. Decl. ¶ 4 (attesting that in August 2021 he was "three and a half years from earning his full pension with Pfizer").

As to Plaintiff's other claimed detriments, though he refers to a "termination on his employment record," Plaintiff points to no evidence thereof. Moreover, the undisputed facts reflect that any such blemish on his employment record is not attributable to Exact. It was Pfizer that initiated Plaintiff's termination, and even if he had not resigned to accept the position at Exact, he would have ceased employment at Pfizer by November 2021. Pl. Dep. 68:14–17. As discussed, remaining employed at Pfizer through a different position remains speculative.

As to the non-competition agreement, it applied only to employment with Pfizer for the duration of Plaintiff's severance period and was a condition of Plaintiff's acceptance of severance. McEntee Decl. Ex. A at 3, 8; Pl. Dep. 96:2–4, 14–16. Any detriment Plaintiff suffered as a result was therefore not due to his decision to accept Exact's offer and does not support his claim here. *See Houston v. Yoncalla Sch. Dist. No. 32*, 2014 WL 3514984, at *13 (D. Or. July 11, 2014).

Further, because Plaintiff did not have a job offer from Pfizer at that time, the agreement affected only the opportunity to apply for a position at Pfizer, which, as discussed, is insufficient.

## CONCLUSION

Plaintiff has failed to create a genuine issue of fact that Defendant Exact Sciences Corporation made an affirmative material misrepresentation on which Plaintiff relied to his detriment. On this record, no reasonable juror could find that Defendant is liable for fraud. Accordingly, Defendant Exact Sciences Corporation's Motion for Summary Judgment (ECF No. 65) is GRANTED.

IT IS SO ORDERED.

DATED this 10th day of August 2026.

s/Michael J. McShane
Michael J. McShane
United States District Judge

11 – OPINION AND ORDER